DRAKE (MERRIAM v.). See Case No. 9,461.
DRAKE v. The ORIENTAL. See Case No. 10,570.

## Case No. 4,065.

### DRAKE et al. v. REDFIELD.

[4 Blatchf. 116.][1]

Circuit Court, S. D. New York. Nov. 16, 1857.

CUSTOMS DUTIES—ACTIONS TO RECOVER BACK—WHEN MAINTAINABLE.

1. Under the act of February 26, 1845 (5 Stat. 727), to entitle a plaintiff to recover back from a collector money paid as duties, he must establish three facts: 1. That the duties were not authorized by law. 2. That he, at or before the payment of the duties, made a protest in writing, setting forth distinctly and specifically the grounds of objection to the payment of the duties. 3. That the payment was made in order to enable him to obtain possession of the goods upon which the duties were imposed.

2. Where an excess of duties is paid under protest, after possession has been obtained by the importer of the goods on which the excess is paid, such excess cannot be recovered back from the collector.

This was an action [by James Drake] against [Heman J. Redfield] the collector of the port of New York, to recover back an excess of duties. At the trial, the plaintiffs submitted to a nonsuit, after the case had gone to the jury, and now moved to have the suit reinstated on the calendar. The goods upon which the duties in question were imposed, were imported into the port of New York about the middle of September, 1855. An appraisement was made of them by merchant appraisers, in the latter part of that month. It was claimed that that appraisement was illegal. That appraisement increased the value of the importation over the invoice value more than 10 per cent. The payment of the duties, according to the invoice value, was made to the collector on the 26th of September, without objection and without a protest. Upon such payment, a permit was given by the collector, and, in the latter part of September, the goods went out of the possession and control of the collector into the possession of the plaintiffs, who disposed of the same. On the 10th of November, the plaintiffs paid to the collector the excess of duty demanded, and accompanied such payment with a protest.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

Almon W. Griswold, for plaintiffs.
John McKeon, Dist. Atty., for defendant.

INGERSOLL, District Judge. In the case of Elliott v. Swartwout, 10 Pet. [35 U. S.] 137, it was decided that a collector of the revenue was not personally liable, in an action to recover back an excess of duties paid to him as collector, and by him, in the regular and ordinary course of his duty, paid into the treasury of the United States, he, the collector, acting in good faith, no protest being made at the time of payment, or any notice given not to pay the money over, or any notice that the party paying intended to sue to recover back the amount paid, although the amount paid was an excess not authorized by law; but that, when a collector had received an excess of duties, and the party paying had, at the time of payment, given notice to him that the duties were charged too high, and that he paid the amount to get possession of his goods, and intended to sue to recover back the amount erroneously paid, accompanied with a notice to the collector not to pay over the amount into the treasury, the collector would, if the duties paid could not have been legally demanded, be liable to refund the same, although he might have paid the amount into the treasury of the United States; that, if the duties paid were illegally exacted, the collector was liable to pay them back, even without a protest, if, at the time the suit for their recovery was commenced, he had not paid them into the treasury; and that, if he had paid them into the treasury at the time the suit for their recovery was commenced, he was still liable to pay them back, if, at the time of payment, he was notified by the party paying that the duties were charged too high, that the payment was made to get possession of the goods, and that a suit was intended to be brought to recover back the amount so paid. This decision was made in January, 1836.

Congress, by an act passed on the 3d of March, 1839 (5 Stat. 348), provided (section 2) that all money paid to any collector of the customs, or to any person acting as such, for unascertained duties, or for duties paid under protest against the rate or amount of duties charged, should be placed to the credit of the treasurer of the United States, and be kept and disposed of as all other money paid for duties was required by law, or by regulation of the treasury department, to be placed to the credit of said treasurer, and should not be held by the said collector or person acting as such, to await any ascertainment of duties, or the result of any litigation in relation to the rate or amount of duty legally chargeable and collectible, in any case where money was so paid; but that, whenever it should be shown, to the satisfaction of the secretary of the treasury, that, in any case of unascertained duties, or duties paid under protest,

more money had been paid to the collector or person acting as such, than the law required should have been paid, it should be his duty to draw his warrant upon the treasurer in favor of the person or persons entitled to the over-payment, directing the said treasurer to refund the same out of any money in the treasury not otherwise appropriated.

Subsequently to the passage of this law, the case of Cary v. Curtis, 3 How. [44 U. S.] 236, came before the supreme court. This was in the winter of 1845. In that case, it was decided that, since the passage of the act of March 3, 1839 (section 2), which required collectors of the customs to place to the credit of the treasurer of the United States all money which they received for unascertained duties, or for duties paid under protest, an action for money had and received would not lie against the collector for the return of duties so received by him; and that the only relief to the party so paying was by application to the secretary of the treasury or to congress.

After this decision in Cary v. Curtis, congress, on the 26th of February, 1845 (5 Stat. 727), enacted, that nothing contained in the above recited act of March 3, 1839, should take away, or be construed to take away or impair, the right of any person or persons who had paid, or should thereafter pay, money, as and for duties, under protest, to any collector of the customs, or other person acting as such, in order to obtain goods, wares, or merchandise imported by him or them, or on his or their account, which duties were not authorized or payable in part or in whole by law, to maintain any action at law against such collector, to ascertain and try the legality and validity of such payment, provided that a protest was made in writing, and signed by the claimant, at or before the payment of the duties, setting forth distinctly and specifically the grounds of objection to the payment thereof.

As the law now is, therefore, it is not every payment of duties, under protest, upon an illegal exaction by the collector, that will entitle the party paying to recover the same back, in a suit at law against the collector. To entitle a plaintiff to recover back from a collector money paid as duties to the collector, he must establish three essential facts. These three essential facts are: 1. That the duties paid were not authorized or payable by law. 2. That he, at or before the payment of the duties, made a protest in writing, in which he set forth distinctly and specifically the grounds of objection to the payment of the duties. 3. That the payment was made in order to enable him to obtain possession of the goods upon which the duties were imposed. And, if he fails in establishing either of these three several facts, he must fail of a recovery. If he establishes two of them and fails to establish the third, he is not entitled to maintain his suit. Be-

fore he can recover, he must show an illegal demand, a payment to regain the possession of his property, an inability to regain the possession of the property without submitting to the payment, and a protest. Maxwell v. Griswold, 10 How. [51 U. S.] 242, 256. If illegal duties are demanded, and they are paid under protest, still, if the payment is not made to enable the party to obtain his goods, if, in the language of the supreme court in Maxwell v. Griswold, it is not made by the party "to regain possession of his property," which could not be regained "except by submitting to the payment," the amount paid cannot be recovered back, in a suit against the collector.

Upon the facts in this case, admitting, for the purpose of the argument, that the excess of duties demanded and received by the collector on the 10th of November, was an illegal exaction, and that the protest which accompanied the payment of such excess by the plaintiffs was regular, the question arises, whether such excess can be recovered back, in a suit against the collector. It is clear that it cannot be recovered back, unless the suit is authorized by the act of congress of February 26, 1845. That act authorizes a suit against the collector, only when the payment of the excess of duties demanded was made in order to obtain the possession of the goods imported. The payment made by the plaintiffs to the collector on the 10th of November, was not made to enable them to obtain the possession of the goods upon which the collector claimed the excess of duties to be due. They were not then in the possession of the collector. They had long before, as early as the month of September preceding, with the consent of the collector, gone into the possession of the plaintiffs, and had been disposed of. Upon the facts, then, in this case, either admitted, or as claimed by the plaintiffs, there can be no recovery against the collector. Therefore, the motion to have the case reinstated on the calendar, cannot be granted.